UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION

**ELIZABETH D. BLACKSHEAR,**
Plaintiff,

v.

Case No.: 8:25-cv-3554-KKM-CPT

Division

**WIPRO LIMITED and WIPRO LLC,**
Defendants.



## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Elizabeth D. Blackshear ("Plaintiff"), proceeding pro se, alleges as follows against Defendants Wipro Limited and Wipro LLC (collectively, "Wipro" or "Defendants"):

### I. NATURE OF THE ACTION

This action arises from Defendants' sustained pattern of discrimination, retaliation, unequal pay practices, medical-leave confidentiality violations, and hostile work environment directed at Plaintiff, a U.S.-based employee who repeatedly raised concerns about inequitable treatment and suffered escalating adverse actions as a result.

Plaintiff was hired to manage U.S. onshore operations only and consistently performed at a high level. Over time, Defendants expanded Plaintiff's responsibilities, denied advancement, stripped authority, and escalated retaliation after Plaintiff engaged in protected activity.

When Plaintiff took protected medical leave, Defendants disclosed her leave and medical status internally and to external clients, publicly stigmatizing her and attributing operational failures to her absence.

By October 6, 2025, the cumulative impact of Defendants' conduct rendered Plaintiff's working conditions objectively intolerable, leaving her no reasonable alternative but separation. Plaintiff's separation therefore constitutes a constructive discharge.

Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Americans with Disabilities Act (ADA), the Family and Medical Leave Act (FMLA), the Equal Pay Act (EPA), the Fair Labor Standards Act (FLSA), and applicable state law.

### II. JURISDICTION AND VENUE

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

Venue is proper in this District under 28 U.S.C. § 1391 because Plaintiff resides in this District, suffered harm here, and Defendants conduct substantial business in Florida.



Plaintiff brings this action to preserve her statutory rights pending resolution of any arbitration-related jurisdictional issues and does not waive any rights or remedies available under federal or state law.

## III. PARTIES

Plaintiff Elizabeth D. Blackshear is a resident of Hillsborough County, Florida.

Defendant Wipro Limited is a multinational corporation doing business throughout the United States, including Florida.

Defendant Wipro LLC is a U.S. entity affiliated with Wipro Limited and acted as Plaintiff's employer.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission, Charge No. 511-2025-04594.

The EEOC issued a Notice of Right to Sue dated September 25, 2025.

Plaintiff files this action within ninety (90) days of receipt of the Notice.

## V. FACTUAL ALLEGATIONS

### A. Employment Background and Scope of Role

Plaintiff was hired in or about September 2021 as a U.S.-based onshore leader responsible for managing U.S. operations and staff for a major regulated financial-services client.

Plaintiff's initial role did not include offshore management responsibilities.

After an India-based manager was reassigned off the project, Plaintiff was required to absorb and stabilize offshore operations in addition to her onshore duties.

This expansion of scope occurred without any increase in compensation, title, or authority, materially increasing Plaintiff's workload and accountability while diminishing her advancement prospects.

### B. Performance and Contributions

Plaintiff consistently delivered high performance, stabilized operations, expanded teams, and received positive feedback from clients and internal stakeholders.

Plaintiff developed operational frameworks and best practices relied upon by leadership and presales teams, yet was repeatedly denied credit, promotion, and compensation.

### C. Pay Disparities and Comparator Evidence

Plaintiff repeatedly raised concerns that her base pay did not align with her offer letter and that U.S.-based onshore employees were underpaid.

Plaintiff does not allege direct wage equivalency between U.S.-based employees and offshore employees paid in Indian Rupees (INR), recognizing currency and economic differences.

Plaintiff alleges that Defendants maintained systemic disparities disadvantaging U.S.-based employees, including base-pay misalignment, denial or removal of onshore cost-of-living adjustments (COLA), preservation of offshore budgets while restricting U.S. compensation, and restricted access to payroll records needed to verify compensation accuracy.

Plaintiff further learned through internal recruiting discussions that U.S.-based candidates performing substantially similar work on the same regulated banking programs, with comparable skill, effort, responsibility, and compliance exposure, declined offered compensation because it was materially lower than their existing pay.

### D. Denial of Training and Promotions

Plaintiff repeatedly sought certifications and training identified by leadership as prerequisites for advancement.

Requests for U.S.-based training were delayed or stalled due to budget constraints, while offshore peers received access more readily.

Plaintiff was repeatedly told she was up for promotion, yet promotions were awarded to others without transparent criteria or explanation.

### E. Protected Activity and Retaliation

On or about March 7, 2025, Plaintiff submitted a written discrimination complaint to senior leadership raising concerns about unequal pay, blocked promotions, restricted training access, and the impact on her mental health.

After engaging in protected activity, Defendants escalated adverse actions, including threats of transfer or demotion, stripping Plaintiff of authority through layered management, exclusion from decision-making, removal of onshore COLA shortly before client negotiations, allowing Plaintiff's project to lapse into free pool status on or about May 27, 2025, and reassignment under an offshore senior manager effective January 2026.

These actions materially altered Plaintiff's job responsibilities, visibility, and career trajectory and would dissuade a reasonable employee from engaging in protected activity.

### F. Hostile Work Environment

Plaintiff was subjected to a hostile work environment, including derogatory remarks about Americans and U.S. leadership, body-shaming and health-related comments, and circulation of blackface imagery on company systems.

When Plaintiff reported the blackface imagery, management laughed and failed to take corrective action.

The conduct was severe and pervasive and altered the conditions of Plaintiff's employment.

### G. Medical Leave and Confidentiality Breaches

Plaintiff took protected medical leave, including for mental health treatment.

On or about August 25, 2025, a client contacted Plaintiff stating they had been informed she was on medical leave and requested backup coverage.

On or about September 4, 2025, a client referenced leadership disclosure of Plaintiff's medical leave and asked whether Plaintiff feared retaliation.

On or about September 5, 2025, during a team meeting, a leader stated that payroll issues were occurring because Plaintiff was on medical leave for mental health treatment.

These disclosures were unauthorized, stigmatizing, and caused reputational and professional harm.

### H. Evidence Preservation and Continuing Violation

Following Plaintiff's protected activity, Defendants restricted Plaintiff's access to electronic systems and records previously available to her, including Microsoft Teams, Outlook communications, payroll records, and device functionality.

Earlier discriminatory and retaliatory acts are pled as background evidence demonstrating a continuing pattern of unlawful conduct culminating in Plaintiff's constructive discharge.

### I. Constructive Discharge and Harm

By October 6, 2025, Defendants' conduct rendered Plaintiff's working conditions objectively intolerable.

Defendants' actions foreseeably exacerbated Plaintiff's medical condition, directly impacting her ability to continue employment and resulting in economic and emotional harm.

### VI. CLAIMS FOR RELIEF

Plaintiff asserts claims for discrimination, retaliation, hostile work environment, disability discrimination and retaliation, FMLA interference and retaliation, equal pay violations, unpaid wages, race discrimination and retaliation under 42 U.S.C. § 1981, fraud and negligent misrepresentation, and constructive discharge.

### VII. PRAYER FOR RELIEF

Plaintiff respectfully requests back pay, front pay, lost benefits, compensatory and punitive damages, liquidated damages where applicable, declaratory and injunctive relief, costs, and all other relief deemed just.

### VIII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

*Elizabeth D. Blackshear*

Elizabeth D. Blackshear, Plaintiff, Pro Se
13141 Sonoma Bend Place, Gibsonton, FL, 33534
Phone: 8131-440-1639
Email: edhowell86@gmail.com